UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-30045-KPN

JOHN F. HANSON, JR. and JOHN F. HANSON,
DMD, P.C.,

                Plaintiffs,

         v.

ORTHALLIANCE, INC.,

                Defendant.

## ORTHALLIANCE, INC.'S ANSWER TO PLAINTIFFS' ORIGINAL COMPLAINT AND COUNTERCLAIM

OrthAlliance answers John F. Hanson, Jr. ("Hanson") and John F. Hanson, DMD, P.C.'s ("PC") complaint and counterclaims.

## 1.    ORTHALLIANCE'S ANSWER TO PLAINTIFF'S ORIGINAL COMPLAINT.

OrthAlliance responds to the complaint, in numbered paragraphs, as follows:

1.    Denied.

2.    The first sentence is denied.  The second sentence is admitted to the extent that the quoted statement appears in a Form 10-K report, the characterization of that statement and the remainder of the second sentence is denied.  The third sentence is denied.

3.    Denied.

4.    Admitted.

5.    Admitted.

6.    Admitted.  However, Hanson does not have standing to sue.

7.    First sentence is admitted.  OrthAlliance is unable to admit or deny the remainder of the paragraph.

8.    Admitted.

9.    First sentence is denied.  Admitted that such agreements exist, but deny that the agreements are between the parties as stated in the second sentence.

10.    Admitted that OrthAlliance acquired certain physical assets identified in the agreements, the remainder of the paragraph is denied.

11.    Admitted, subject to the terms of the agreements.

12.    Admitted, subject to the terms of the agreements.

13.    Admitted, subject to the terms of the agreements.

14.    Admitted, subject to the terms of the agreements.

15.    Denied.

16.    Admitted, subject to the terms of the agreements.

17.    Admitted, subject to the terms of the agreements.

18.    Admitted, subject to the terms of the agreements.

19.    Admitted, subject to the terms of the agreements.

20.    Admitted, subject to the terms of the agreements.

21.    Admitted, subject to the terms of the agreements.

22.    Admitted, subject to the terms of the agreements.

23.    Admitted, subject to the terms of the agreements.

24.   Admitted, subject to the terms of the agreements.

25.   Admitted that OrthAlliance is entitled to a service fee, subject to the terms of the agreements. The remainder of the paragraph is denied.

26.   The first sentence is admitted with the qualification that PC and Hanson agreed to such an employment agreement. The remainder of the paragraph is admitted, subject to the terms of the agreements.

27.   Admitted, subject to the terms of the agreements.

28.   Denied.

29.   Denied.

30.   Denied.

31.   Denied.

32.   No response is required.

33.   Denied.

34.   Admitted, subject to the terms of the agreements.

35.   Denied.

36.   Denied.

37.   Denied.

38.   Denied.

39.   Denied.

40.   No response is required.

41.   Denied.

42.   Denied.

43.   Denied.

44.   Denied.

45.   Denied.

46.   No response is necessary.

47.   Denied.

48.   Denied.

49.   Denied.

50.   Denied.

51.   Denied.

52.   Denied.

53.   Denied.

54.   Denied.

55.   Denied.

56.   No response is required.

57.   Denied.

58.   Denied.

59.   Denied.

60.   Denied.

61.   Denied.

62.   Denied.

63.   Denied.

64.   Denied.

65.   Denied.

66.   No response is required.

67.    Admitted, subject to the terms of the agreements.

68.    Denied.

69.    Denied.

70.    Denied.

71.    Denied.

72.    No response is required.

73.    Denied.

74.    Denied.

75.    Denied.

76.    No response is required.

77.    The first sentence is admitted, but only to the extent provided under the Service Agreement.  The second sentence is denied.

78.    Denied.

79.    No response is required.

80.    Denied.

81.    No response is required.

## 2.    ORTHALLIANCE'S AFFIRMATIVE DEFENSES.

OrthAlliance brings these affirmative defenses as stated below.

82.    PC's and Hanson's claims are barred by statutes of limitations.

83.    PC and Hanson have failed to state a claim upon which relief can be granted.

84.    PC's and Hanson's claims are barred by fraud.

85.    PC and Hanson are estopped from seeking declaratory relief as to the legality of the Service Agreement.  Following the execution of the Service Agreement,

neither PC nor Hanson complained that the Service Agreement or any part thereof was illegal or inappropriate. Specifically, neither PC nor Hanson complained or alleged that

a.    OrthAlliance exerted improper control of the practice of PC and Hanson;

b.    OrthAlliance's management fees did not reasonably relate to the fair market value of the services it provided to PC; or

c.    OrthAlliance's fees constituted illegal fee splitting.

Accordingly, PC and Hanson have no right to seek declaratory relief as to the legality of the Service Agreement.

86.    Hanson is not a party to the Service Agreement, and has no contractual rights or claims thereunder. Further, the Service Agreement provides that it does not create any obligations to, or rights in, third parties to the agreements. Accordingly, Hanson lacks standing to seek any adjudication regarding the Service Agreement.

87.    To the extent PC and Hanson allege that OrthAlliance induced them to enter the Purchase and Sale Agreement, the Service Agreement or the Employment Agreement (which OrthAlliance expressly denies), the PC and Hanson have waived any potential claim for fraudulent inducement by repeatedly confirming, ratifying and performing under the agreements.

88.    To the extent OrthAlliance made any pre-contractual or other statements of material fact to Hanson or PC (which OrthAlliance expressly denies), PC and Hanson could not reasonably rely upon any such statements that conflicted with the terms of the parties' subsequent expressed written agreements. The Purchase and Sale Agreement between OrthAlliance and Hanson expressly provides that it is the complete agreement between the parties and that it supercedes all other prior agreements and understandings, both written and oral, among the parties, or any of them with respect to

6

the subject matters hereof.    As well, the Service Agreement between PC and OrthAlliance provided that there are no other agreements or understandings, written or oral, between the parties regarding that agreement.

89.    PC and Hanson willingly paid all service fees due to OrthAlliance.  PC and Hanson's claims are barred by their voluntary payment.

90.    PC and Hanson entered into a new contract with OrthAlliance, express or implied, in which the parties agreed to the discharge of OrthAlliance's existing obligation by lesser services.    PC and Hanson accepted the services they wanted from OrthAlliance as full satisfaction of their claims.  Hanson's and PC's claims are barred by an accord and satisfaction.

91.    Hanson, PC and OrthAlliance have each performed their obligations under the Service Agreement.  Hanson's and PC's silence in raising any complaints and their inaction in seeking correction of the complaints raised in their complaint for such long a period shows PC and Hanson's intentions to yield their right to the services they now complain of and proves waiver.  Stated otherwise, their intentional conduct in accepting the services as provided by OrthAlliance is completely inconsistent with current demand that OrthAlliance perform all services.  PC's and Hanson's claims are barred by waiver.

92.    PC and Hanson have assured OrthAlliance that its services were satisfactory.  Had OrthAlliance known that Hanson or PC was dissatisfied, OrthAlliance could have taken numerous steps to correct valid complaints.  As a result, OrthAlliance has changed its position and has parted with some rights by reason of PC and Hanson's stated satisfaction with its services.  PC and Hanson are now estopped from

denying the truth of their representations that they were satisfied with OrthAlliance's performance. PC and Hanson are barred by equitable and quasi estoppel.

93. PC and Hanson, have unreasonably delayed in complaining about the agreements or in bringing this suit. Hanson and PC's delay is without excuse and has prejudiced OrthAlliance in its defense. Hanson's and PC's claims are barred by laches.

94. PC and Hanson knowingly accepted and consented to the possibility, under explicit contractual provisions, that OrthAlliance might affiliate with other business, including Orthodontic Centers of America.

95. To the extent OrthAlliance made any pre-contractual or other statements of material fact to Hanson or PC (which OrthAlliance expressly denies), such statements were merely:

a. statements of opinion; or

b. predictions of future events, and are not actionable.

96. PC and Hanson's purported defense of "illegality" of the Service Agreements is not pled with sufficient particularity to enable the Court to determine how the actions of OrthAlliance are illegal, or to enable OrthAlliance to reasonably respond thereto.

97. Hanson is a well-educated, highly intelligent, and experienced person. He was provided ample opportunity to consult with attorneys, accountants, business advisors, and other professionals concerning the terms, conditions, requirements and risks of the Service Agreement. Upon information and belief, PC and Hanson availed themselves of the opportunity to consult with such professionals before executing the Service Agreement and other related documents, therefore barring their claims.

8

98.    To the extent the PC and Hanson seek equitable relief, such relief should be denied because they have unclean hands.

99.    PC and Hanson have failed to take reasonable steps to seek to have the Service Agreement reformed to remove the alleged defects of which they complain in their complaint. Accordingly, any damages and/or rescission sought by PC and Hanson are not recoverable, or, in the alternative, are subject to reduction.

100.    Hanson or PC, by their unreasonable and deliberate acts and/or conduct, have made impossible or otherwise prevented some or all of the obligations that OrthAlliance was required to perform under the Service Agreement.

101.    As set forth in the "Counterclaims" below, PC and Hanson are liable to OrthAlliance for substantial damages that must be offset against any amounts that OrthAlliance is found to owe PC and/or Hanson.

102.    PC and/or Hanson have failed, neglected, and/or refused to mitigate the alleged damages and loss referred to in the complaint.

103.    PC and/or Hanson have failed to show there was a material default of the agreements with OrthAlliance prior to instituting this action, which bars the plaintiffs' standing to sue OrthAlliance.

104.    In the event the Purchase and Sale Agreement or the Service Agreement are declared invalid for any reason, which is specifically denied, OrthAlliance is entitled to reformation of such provision in the Agreements to ensure the intent and the original economic relationship of the parties.

105.    By failing to accept and/or fully utilize business and consulting services as provided in the Service Agreement, PC and Hanson, individually or collectively, acted in

a manner that prevented OrthAlliance from efficiently providing services to enhance the daily operations and/or create efficiencies of practice for the PC.

106.   PC and Hanson are responsible for all or part of their own damages.

**3.   CONDITIONS PRECEDENT.**

107.   PC and Hanson have not performed all conditions precedent that they were required to perform prior to filing suit.  Specifically, PC failed to provide notice of any complaints and offer a time of cure.

**4.   ORTHALLIANCE'S COUNTERCLAIMS AGAINST PC AND HANSON.**

OrthAlliance brings these counterclaims against Hanson and PC as stated below.

1.   OrthAlliance is a Delaware corporation duly authorized to conduct business in Massachusetts.

2.   Hanson is a resident of Berkshire County, Massachusetts.

3.   PC is a Massachusetts professional corporation with its principal place of business in Berkshire County, Massachusetts.

4.   Complete diversity exists and this is an action for damages in excess of $75,000, exclusive of interest, costs and attorney's fees.

5.   All conditions precedent to the filing and maintenance of these counterclaims have been performed, excused or waived.

**4.1   Supporting factual allegations.**

6.   OrthAlliance entered into several agreements to buy certain non-professional physical assets of Hanson's orthodontic practice.   Concurrently, OrthAlliance agreed to provide practice management services to Hanson's orthodontic practices.  In return, Hanson received a substantial amount of money, and agreed to remain working at his practice for a certain period and to not compete with his practice

10

following the termination of the agreements for a limited time and within a limited territory.

7.    Under the Service Agreement, OrthAlliance and PC agreed that OrthAlliance would provide PC with practice management, financial and marketing services, and such facilities, equipment, and support personnel as reasonably required by Hanson and PC to operate, as determined by OrthAlliance in consultation with Hanson.    OrthAlliance assumed all power and authority reasonably necessary to manage the business affairs of PC's orthodontic offices subject to the requirements of law relating to the practice of dentistry. OrthAlliance further agreed to employ PC's non-professional staff and provide PC with various services, including payroll, business systems and procedures, purchasing, information systems, marketing, and planning.

8.    The Service Agreement meticulously preserved the integrity of the professional relationship between Hanson and his patients. It provided that Hanson and PC shall retain control over all aspects of and decisions directly affecting the course of treatment of any patients. PC was to maintain complete care, custody and control over the office facilities. Hanson was responsible for the direct professional supervision and control of all hygienists, assistants and other orthodontic staff in the rendering of patient care. PC and Hanson were obligated to provide professional services to patients in compliance at all times with ethical standards, laws and regulations applying to the dental profession.

9.    Under the Service Agreement, PC deposited its accounts receivable into an OrthAlliance bank account with PC's name on it. PC expenses were paid from this account. All expenses of PC that were paid by OrthAlliance were direct pass-throughs,

meaning the PC paid only the actual cost of things such as rent, electricity, etc. OrthAlliance typically received its service fees from this account after all PC expenses were paid and a draw was issued to PC.

10.    The Service Agreement also contains a covenant not to compete ("Non-Compete"). The Non-Compete prohibits PC from opening any additional offices within a ten-mile radius of their existing locations without the consent of OrthAlliance and from advertising or soliciting patients, staff or referrals for a period of two years after the termination of the Service Agreement. The Service Agreement further obligates PC to enter into an employment agreement with Hanson.

11.    The Service Agreement was amended when OrthAlliance merged with a wholly owned subsidiary of Orthodontic Centers of America, Inc. ("OCA"). The amended agreement provided that PC and Hanson would use OCA software for accounting, among other terms. Hanson personally guaranteed that PC would perform all of the obligations of the Service Agreement, as amended.

12.    The Employment Agreement between PC and Hanson required him to work for PC for a certain initial term and contained restrictive covenants similar to those found in the Service Agreement.  PC and Hanson subsequently amended this Employment Agreement. OrthAlliance is a third-party beneficiary to this Employment Agreement.

13.    PC stopped depositing its revenues as required by the Service Agreement. Since then, PC has been in breach of its agreement with OrthAlliance. As well, Hanson has violated his Employment Agreement with PC. Hanson is personally liable to OrthAlliance for the payment of all service fees, including all costs of collection.

12

14.   PC and Hanson state that they filed their complaint to stop the illegal corporate practice of dentistry by OrthAlliance and to stop OrthAlliance's practice of illegal fee splitting. Ironically, if either occurred, PC and Hanson were the sole cause of the illegal conduct as PC had committed to OrthAlliance never to violate any law. In turn, PC and Hanson committed that Hanson would never violate any law. If PC and Hanson's complaint has merit, it shows that both are intentional violators of the law in contravention of PC's contract with OrthAlliance.

15.   According to PC and Hanson, PC and Hanson did each of the following illegal and unethical acts:

a.   PC and Hanson granted OrthAlliance the right to control, influence and interfere with substantial and material aspects of Dr. Hanson's orthodontic practice.

b.   PC and Hanson allowed OrthAlliance to dictate virtually every material aspect of Dr. Hanson's dental practice.

c.   PC and Hanson allowed OrthAlliance to influence and control his practice violating the prohibition against the corporate practice of dentistry under Massachusetts law.

d.   PC and Hanson allowed OrthAlliance to split his fees for securing or soliciting patients, which is illegal and contrary to the public policy of Massachusetts.

e.   PC and Hanson granted OrthAlliance the power, ability and opportunity to control, influence and interfere with his professional judgment, in violation of Massachusetts law and public policy.

f.   PC and Hanson granted OrthAlliance complete discretion over expenses and payments that had the effect of directly influencing Dr. Hanson's ability to manage staff and their relationship with others and ultimately control Dr. Hanson himself.

g.   PC and Hanson granted OrthAlliance the authority to secure and/or solicit patients in an unlawful manner.

16.    Each of the acts named in the counterclaim ¶ 15 (a)-(g) were committed, if at all, by PC and Hanson intentionally and in knowing violation of Massachusetts law.

17.    OrthAlliance's contracts with PC and Hanson did not encourage or permit, and in fact explicitly prohibited, PC or Hanson from doing any of the acts mentioned in counterclaim ¶ 15 (a)-(g).

18.    The corporate veil of PC should be pierced and Hanson held individually liable.    PC has become a sham to perpetuate a fraud upon OrthAlliance.    It has functioned as the alter ego of Hanson.  On information and belief, Hanson has failed to keep PC's property separate from his own, has complete control over PC and has used PC for personal purposes.  Finally, as alleged by Hanson and PC, PC has been used to circumvent the statutes that regulate Hanson's practice as a dentist.

19.    OrthAlliance alleges counts 1, 2, 3 and 4 of its counterclaims only in the event that Hanson or PC prove that their claims are valid and supported by evidence, which OrthAlliance denies.  The remaining counts are independent.

**4.2    COUNT 1: OrthAlliance is entitled to reform the Service Agreement between itself and PC to comply with law.**

20.    OrthAlliance incorporates the allegations in counterclaim paragraphs 1-19.

21.    OrthAlliance and PC agreed that the language in all parts of the Service Agreement shall be construed according to the parties' intent.

22.    OrthAlliance and PC agreed that nothing in the Service Agreement was intended to interfere, or should be construed as interfering, in any way with the Hanson's ability to independently exercise professional and ethical judgment in the performance of his patient care responsibilities.

14

23.    OrthAlliance and PC also agreed that Hanson, personally or through any of his professional employees or agents, retained control or supervision over the provision of all professional services, with the sole authority to direct the professional, and ethical aspects of his orthodontic practice.

24.    PC knew when entering the Service Agreement that OrthAlliance was not authorized or qualified to engage in any activity which may be construed or deemed to constitute the practice of dentistry or orthodontics.

25.    PC further agreed that to the extent any act or service required of OrthAlliance in the Service Agreement should be construed or deemed to constitute the practice of dentistry or orthodontics, the performance of the act or service by OrthAlliance shall be deemed waived and forever unenforceable. Thus, OrthAlliance is not obligated to do anything that constitutes the "practice of dentistry" under its agreement with PC.

26.    OrthAlliance and PC agreed that any offensive provision of the Service Agreement may be amended to comport with law.

27.    To the extent that PC or Hanson establish that any provision of the Service Agreement is violative of law or regulations, the sole remedy to PC is the joint amendment of the contract to preserve the underlying economic and financial arrangements between PC and OrthAlliance.

**4.3    COUNT 2: OrthAlliance, as a third party beneficiary, is entitled to require PC and Hanson to modify the Employment Agreement to comply with law.**

28.    OrthAlliance incorporates the allegations in counterclaim paragraphs 1-27.

29.    PC and Hanson agreed that any offensive provision of the Employment Agreement shall be amended to comport with law.

15

30.    To the extent that PC or Hanson establishes that any provision of the Employment Agreement is violative of law or regulations, the sole remedy to PC or Hanson is the modification of the agreement. OrthAlliance, as a third party beneficiary, is entitled to enforce the modification of the Employment Agreement, as amended.

**4.4    COUNT 3: PC and Hanson have breached their contracts with or benefited OrthAlliance by, according to their complaint, providing services to patients that were below Hanson's ethical standard and the laws and regulations applying to the dental profession.**

31.    OrthAlliance incorporates the allegations in counterclaim paragraphs 1-30.

32.    If PC and Hanson's allegations are proven, PC and Hanson have violated Hanson's professional duties under applicable law. Hanson may be subject to administrative penalties, injunctive relief, and criminal penalties.

33.    OrthAlliance and PC agreed that nothing in the Service Agreement was intended to interfere, or shall be construed as interfering, in any way with Hanson's ability to independently exercise professional and ethical judgment in the performance of his patient care responsibilities.

34.    PC and Hanson have breached their agreements with OrthAlliance by causing OrthAlliance to practice dentistry or defaulting in their duty to govern all elements of the practice of dentistry, as alleged in their complaint.

35.    Moreover, OrthAlliance and PC agreed that PC shall comply with all applicable local rules, ordinances and all standards of dental and orthodontic care and shall provide professional services to patients hereunder in compliance at all times with ethical standards, and laws and regulations applying to the dental profession. Under their complaint, if proven, PC and Hanson have, at some prior point, violated Hanson's ethical standards, and the laws and regulations applying to the dental profession. PC

16

and Hanson have breached their agreements with OrthAlliance because of Hanson's and PC's violation of ethical standards, laws and regulations applying to the dental profession.

36.    OrthAlliance and PC agreed that should PC discover any deficiencies in the performance of any personnel or in the quality of professional services, PC was required to immediately report such deficiencies to OrthAlliance and then take appropriate steps at once to remedy such deficiencies.  Under their complaint, if proven, PC and Hanson have, at some prior point, violated Hanson's and PC's obligation to provide OrthAlliance with notice of any deficiencies discovered in the performance of any personnel or in the quality of professional services.

37.    Hanson's and PC's breach of their obligations to comply with professional standards, laws and regulations have caused OrthAlliance's actual damages, including the potential loss of its benefits under the contracts with PC.

38.    OrthAlliance is entitled to recover from PC and Hanson all lost and future revenues and other damages in an amount to be determined at trial.

39.    Under various agreements, OrthAlliance is entitled to recover from PC its reasonable costs and attorney's fees.

### 4.5    COUNT 4: PC's breach of the Service Agreement by not employing an orthodontist who independently exercises professional and ethical judgment in patient care.

40.    OrthAlliance incorporates the allegations in counterclaim paragraphs 1-39.

41.    PC and OrthAlliance agreed that PC shall be responsible for the conduct of each orthodontist PC employed.  More specifically, the Service Agreement provided that PC shall be responsible for the employment and professional supervision of all orthodontists, dental hygienists and dental assistants affiliated with PC and all

17

orthodontic care rendered to patients shall be rendered by such orthodontists. Additionally, the Service Agreement provided that Hanson was responsible for the direct professional supervision and control of all hygienists, assistants, technicians and other orthodontic staff in their rendering of patient care.

42.    PC and OrthAlliance agreed PC would be responsible for assuring that any orthodontist employed entered into an "Employment Agreement" substantially similar to the "Employment Agreement" between PC and Hanson.

43.    The Employment Agreement between PC and Hanson provided that nothing in the agreement was intended to interfere, or shall be construed as interfering, in any way with the orthodontist's ability to independently exercise professional and ethical judgment in the performance of orthodontist's patient care responsibilities.

44.    Under their complaint, if proven, PC and Hanson have, at some prior point, violated PC's obligation to employ only orthodontists that independently exercise professional and ethical judgment in the performance of orthodontist's patient care responsibilities. Specifically, PC and Hanson alleged that Hanson did not independently exercise professional and ethical judgment in the performance of orthodontist's patient care responsibilities.

45.    Hanson's and PC's breach of their obligations to comply with professional standards, laws and regulations have caused OrthAlliance's actual damages including the potential loss of its benefits under the contract with PC.

46.    OrthAlliance is entitled to recover from PC and Hanson all lost and future revenues and other damages in an amount to be determined at trial.

18

47.    Under various agreements, OrthAlliance is entitled to recover from PC and Hanson its reasonable costs and attorney's fees.

### 4.6    COUNT 6: Specific performance.

48.    OrthAlliance incorporates the allegations in counterclaim paragraphs 1-47.

49.    The terms and conditions of the Service Agreement and the related documents are clear, unambiguous, corroborated by documentary evidence and unmistakenly reflect the intent of the parties at the time of the execution of these documents.

50.    A key component to the agreements between the PC and OrthAlliance was the requirement that OrthAlliance was required to make a large initial outlay of cash and other resources to Hanson and/or PC.  As a result of OrthAlliance's business services provided to PC, the productivity and revenues of PC have increased.  Now because PC and Hanson have received the benefit of the initial large cash outlay and other resources expended by OrthAlliance and have increased their revenues significantly, Hanson and/or PC want to terminate the valid and enforceable Service Agreements, and Employment Agreements.

51.    Unless PC and Hanson are required to perform pursuant to the Service Agreement and the related documents, OrthAlliance's actual monetary damages will be difficult to measure.  As a result, OrthAlliance may not be made whole by the legal remedy of damages.  OrthAlliance respectfully requests that the Court order PC and Hanson to specifically perform pursuant to the terms of the Service Agreement.

### 4.7    COUNT 7: Breach of contract.

52.    OrthAlliance incorporates the allegations in counterclaim paragraphs 1-51.