

O 4 CV 30045-KPN

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| *In re* OrthAlliance, Inc. Contract Litigation | MDL Docket No. _____ |

## BRIEF IN SUPPORT OF ORTHALLIANCE'S MOTION FOR TRANSFER OF ACTIONS FOR CONSOLIDATED PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407

OrthAlliance, Inc. ("OrthAlliance") submits this brief in support of its motion for transfer of the cases listed on the Schedule of Actions (the "Schedule") for coordinated or consolidated pretrial proceeding pursuant to 28 U.S.C. § 1407. This brief will also address the selection of the appropriate transferee forum.

## 1.    INTRODUCTION AND BACKGROUND.

OrthAlliance is a corporation organized under the laws of Delaware. The company was formed from the merger of Premier Orthodontic Group, Inc. and US Orthodontic Care, Inc. and began operations in 1997. OrthAlliance provides a comprehensive range of business, office management and consulting services to orthodontists in order to assist them in the operation of their orthodontic practices. Each orthodontic practice affiliated with OrthAlliance remains independent of the company's other affiliated practices.

In order to effectuate the provision of business services, OrthAlliance enters into a series of agreements with orthodontists and their practices. Typically, OrthAlliance purchases or otherwise acquires all of the tangible and intangible assets of a practice, excluding those assets that a non-licensed entity may not own under applicable state law. Ownership of the assets is transferred to OrthAlliance either through an asset purchase agreement, a stock purchase or by a merger between OrthAlliance and the practice. In consideration, the orthodontist, as the owner of the practice, receives cash, stock in OrthAlliance, or a combination of the two. Invariably, OrthAlliance pays a high consideration for the purchase of a practice's assets. The tangible and intangible assets OrthAlliance acquires become part of the services and support that the company provides to the affiliated practice, its doctor owners, and any doctor that may subsequently become the owner of the practice.

Concurrently with OrthAlliance's acquisition of the assets, the orthodontist's practice enters into a long-term "Service Agreement" with OrthAlliance. Each of the Service Agreements is substantially similar in that the agreements obligate OrthAlliance to make available certain services related to the business operations of the practice. The Service Agreements are in most instances effective for a period of 20 to 25 years. An orthodontist entering into such arrangements with OrthAlliance is also usually required to execute an "Employment Agreement" with his or her respective practice. Through this agreement, the orthodontist is contractually obligated to work for his or her practice for, on average, five years. At the expiration of the doctor's term under an Employment Agreement, the doctor may extend the term of the agreement or sell the practice to another doctor. Although not identical, OrthAlliance's agreements are

basically standard contracts with minor variations according to applicable state law and the negotiations between the parties.

In this litigation, those that brought suit against OrthAlliance and those that OrthAlliance brought suit against are licensed orthodontists and their respective practices (the orthodontists and their practices are collectively referred to hereafter as the "Doctors"). OrthAlliance entered into contractual arrangements like those described above with each Doctor. Subsequently, each Doctor discontinued paying OrthAlliance the required service fees. Some of the Doctors then brought suit against the company claiming that, *inter alia*, OrthAlliance breached the Service Agreement. Other Doctors simply chose to cease paying service fees and wait until OrthAlliance brought suit against them.

The timing of the Doctors' cessation of the payment of service fees is also relevant. On November 9, 2001, OrthAlliance merged with a subsidiary of Orthodontic Centers of America, Inc., a similar management service organization and a competitor of OrthAlliance.[1] As the Northern District of Indiana found "since the merger, orthodontists have sought ways to end their practice-management relationships before the contracts expire . . . . Toward that end, many of these practitioners . . . have filed suits against OrthAlliance."[2] The factual relevance here concerns OrthAlliance's claim that the Doctors filed suit and/or stopped performing under the Service Agreements because of the merger and not because OrthAlliance breached the Service Agreements.

---

[1]    Two of the suits for which transfer is requested, *Kentucky Center* and *Orthodontic Affiliates*, also name Orthodontic Centers of America, Inc., OrthAlliance's parent company, as a defendant.

[2]    *Orthodontic Affiliates, P.C. v. OrthAlliance, Inc.*, 210 F. Supp. 2d 1054, 1056 (N.D. Ind. 2002).

*Brief in support of motion to transfer, 14 September 2004, page 3.*

2.    **CASES FOR WHICH TRANSFER IS REQUESTED PURSUANT TO §
1407.**

2.1    **Group one: the Plaintiff Doctors' suits.**

The cases for which transfer is sought are most easily organized by dividing the cases into two groups.    The first group of cases are those initiated by certain orthodontists and their practices (collectively, the "Plaintiff Doctors") against OrthAlliance.    The second group of cases are those actions initiated by OrthAlliance against certain orthodontists and their practices (collectively, the "Defendant Doctors"). Set forth below is a brief description of the status of the Plaintiff Doctors' cases that OrthAlliance seeks to transfer and consolidate:

1.    *Clower* (**Exhibit 1**):    This case is currently before Judge J. Owen Forrester in the Northern District of Georgia.    Discovery is closed and the parties each have a motion for partial summary judgment pending before the court.    A trial date has not been set.

2.    *Orthodontic Affiliates* (**Exhibit 2**):    The *Orthodontic Affiliates* case was consolidated with the *Lahrman* case, discussed below.    The consolidated action is before Judge Philip P. Simon in the Northern District of Indiana.    Discovery in this case closed on June 1, 2004 and the case is set for trial in May of 2005.    Currently, the parties to the consolidated action have motions for summary judgment pending before the court.

3.    *Lahrman* (**Exhibit 3**):    As stated above, this case has been consolidated with *Orthodontic Affiliates* and motions for summary judgment are pending.    The case is set for trial in May of 2005 and discovery closed on June 1, 2004.

4.      *Togrye* (**Exhibit 4**):  The Togrye case is currently before Judge Todd J. Campbell in the Middle District of Tennessee.  This case is set for trial on December 14, 2004 and discovery has closed.

5.      *Kentucky Center for Orthodontics* (**Exhibits 5 & 6**):  This case is currently before Judge Karl S. Forester in the Eastern District of Kentucky.  OrthAlliance recently amended its pleading to include claims against the individual doctor owners of Kentucky Center, Drs. Durbin and Huang.  Those doctors counterclaimed against OrthAlliance. Discovery has been reopened and is scheduled to be completed by November 29, 2004. The case is set for trial on March 22, 2005.

6.      *Garner* (**Exhibit 7**):  This case is currently before Judge Henry Adams in the Middle District of Florida.  Discovery has not progressed very far and OrthAlliance anticipates the need to request further discovery.  The plaintiffs in this case recently filed a motion for summary judgment.  The case is set for trial on March 8, 2005.

7.      *Scott* (**Exhibit 8**):  This case is before Judge Elizabeth Kovachevich in the Middle District of Florida.  As with the *Garner* case, discovery has not progressed very far.  The discovery cut-off date is September 30, 2004.  OrthAlliance also anticipates the need to request further discovery.  The case is set for trial on February 7, 2005.

8.      *Hanson* (**Exhibit 9**):  This case is before Judge Michael A. Ponsor in the District of Massachusetts.  This action was recently filed and there are no substantive motions currently pending.  Discovery is scheduled to be completed by December 31, 2004.  This case is not yet scheduled for trial.

**2.2    Group two:    OrthAlliance's suits against the Defendant Doctors.**

Set forth below is a brief description of the status of OrthAlliance's cases against the Defendant Doctors for which OrthAlliance seeks transfer:

1.    *Philipp* (**Exhibit 10**):  This suit was filed on July 20, 2004 in the Northern District of Alabama.  The defendants filed an answer on September 2, 2004.

2.    *Greenbaum* (**Exhibit 11**):  This suit was filed on July 21, 2004 in the District Court of Oregon.  The defendant in this case filed an answer and counterclaim on August 10, 2004.

3.    *Schnibben* (**Exhibit 12**):  This suit was filed by OrthAlliance in the Northern District of Illinois on July 23, 2004.  The defendant has filed a motion to dismiss.

4.    *Goodwin* (**Exhibit 13**):  This suit was filed by OrthAlliance in the Northern District of Indiana on July 23, 2004.  The defendant in this case answered and counterclaimed on August 12, 2004.

5.    *Trawick* (**Exhibit 14**):  This case has been sent for filing to the Northern District of Florida.  OrthAlliance has not received a file stamped copy of the complaint and the complaint is not yet available on Pacer.  However, the following cause number has been assigned:  3:04-CV-310 MCD/MD.

6.    *Carroll* (**Exhibit 15**):  This case was filed on September 2, 2004 in the Southern District of Florida.

### 2.3    Potential tag-along cases.

Several cases related to those for which transfer is sought are on appeal on the issue of the legality of the agreements between OrthAlliance and certain affiliated orthodontist and their practices.  The agreements at issue in those cases are very much like those at issue in the cases for which transfer is sought.  The first of these cases on appeal is one of a group of consolidated actions located in the Northern District of Texas.  That case, *Penny v. OrthAlliance, Inc.*, No. 3:01-CV-1569-N, is currently on appeal in the Fifth Circuit.  In an opinion dated March 27, 2003, the *Penny* court declared the agreements between OrthAlliance and the *Penny* plaintiffs illegal.[3] Further, due to the illegality of the contracts, the *Penny* court subsequently found that OrthAlliance's counterclaims, with the exception of unjust enrichment, failed.[4]  The *Penny* court's ruling has been extended to the *Barnett* and *Perkins* actions, which are two of the cases consolidated with *Penny*.[5]  Two other actions consolidated with *Penny*, *Borkowski* and *Cole*, have similar motions for summary judgment on the legality issue pending.  It is expected that the court will follow the reasoning of *Penny* and declare the agreements at issue in those cases illegal as well.[6]  Because the agreements have been ruled illegal, the breach of contract claims in those cases are essentially moot unless reversed by the Fifth Circuit and the cases no longer contain factual elements common to the cases for which transfer and consolidation is now sought.  Accordingly,

---

[3]    *Penny v. OrthAlliance, Inc.*, 255 F. Supp. 2d 579 (N.D. Tex 2003).

[4]    *Penny v. OrthAlliance, Inc.*, 2003 WL 21640570, at *1-2 (N.D. Tex. July 9, 2003).

[5]    *Penny (Barnett) v. OrthAlliance, Inc.*, 2004 WL 877373 (N.D. Tex. Apr. 23, 2004); *Perkins v. OrthAlliance*, No. 3-03-CV-1732-N (N.D. Tex. Apr. 19, 2004) (Order). *Perkins* was consolidated with *Penny* subsequent to the *Penny* ruling.

[6]    Another case, *Steven W. Potter & Steven W. Potter, D.D.S., P.C. v. OrthAlliance, Inc.*, No. 3:04-CV-1725-N (N.D. Tex.) was consolidated into *Penny* on August 30, 2004.

*Brief in support of motion to transfer, 14 September 2004, page 7.*

a request for consolidation with respect to the *Penny* consolidated cases will not be made unless the *Penny* decision is reversed by the Fifth Circuit.

Two other cases against OrthAlliance are also currently on appeal, one in the Ninth Circuit (*Engst v. OrthAlliance, Inc.*, No. C01-1469C (W.D. Wash.)) and one in the Tenth Circuit (*Neilson v. OrthAlliance, Inc.*, No. 02CV1851 (D.C. Colo.)). Like *Penny*, the main issue on appeal in each of the cases is the legality of OrthAlliance's agreements with its affiliated practices and practitioners. If OrthAlliance prevails in the appeal of these cases, it is expected that transfer and consolidation will be requested for each action upon remand from the appellate court to the district court.

In addition, OrthAlliance intends to file a number of new suits against other affiliated doctors and their practices substantially similar to the suits already brought against the Defendant Doctors. Those cases are anticipated to be filed in Alaska, Arizona, Arkansas, Georgia, Hawaii, Maryland, Massachusetts, Minnesota, Mississippi, New Mexico, New York, Ohio, South Carolina and South Dakota. OrthAlliance also expects to seek transfer and consolidation of these actions upon filing.

## 3.    ARGUMENT.

### 3.1    The power of the Judicial Panel on Multidistrict Litigation.

The Panel is empowered by the provisions of 28 U.S.C. § 1407 to transfer for pretrial coordination or consolidation civil actions pending in different districts involving one or more common questions of fact, where such transfer will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions. The Panel has transferred groups of cases under circumstances similar to those presented here. In the recent *In re PrimeVision Health, Inc. Contract Litigation* case, the Panel transferred three cases brought by groups of optometry and

ophthalmology practices against their service provider, PrimeVision, and one case brought by PrimeVision against an affiliated practice.[7]  Similar to the facts here, the actions brought in *PrimeVision* related to standardized agreements used for the provision of certain services.  The Panel found that transfer was necessary "in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties and the judiciary."[8]

As in *PrimeVision*, the suits against OrthAlliance and those brought by OrthAlliance involve relatively standard agreements used by OrthAlliance for the provision of services to affiliated orthodontists and their practices.  Thus far, discovery has been repetitive, where discovery has progressed, and will likely continue to be so in other cases unless transfer pursuant to 28 U.S.C. § 1407 into one district is accomplished.  Moreover, due to the number of different jurisdictions and the number of cases filed against OrthAlliance and by OrthAlliance, there is a danger of inconsistent pretrial rulings.  Consolidation will conserve the resources of both the parties and the judiciary and will promote the just conduct of the actions.

### 3.2  Common questions of fact exist in all of the actions for which transfer is sought.

#### 3.2.1  The claims of the Plaintiff Doctors.

Each of the Plaintiff Doctor's claims is at its core based on the alleged failure of OrthAlliance to perform its contractual obligations under a Service Agreement.[9]  Although variations do exist with respect to the claims made by each Plaintiff Doctor,

---

[7]    206 F. Supp. 2d 1369, 1370 (J.P.M.L. 2002).

[8]    *Id.*

[9]    *See, e.g., In re Nigeria Charter Flights Contract Litigation*, 323 F. Supp. 2d 1375, 1376 (J.P.M.L. 2004).

this is not a bar to consolidation under § 1407 because the factual basis for each Plaintiff Doctor's complaint centers on OrthAlliance's alleged wholesale failure to provide business and consulting services, *i.e.*, OrthAlliance's methods of doing business with its affiliated doctors.[10]    Accordingly, the cases all involve common questions of fact and thus meet the threshold requirement for transfer under 28 U.S.C. § 1407.

The counts contained in the Plaintiff Doctors' complaints are generally consistent from case to case. Each of the Plaintiff Doctor's complaints includes some or all of the following claims (often in identical language):

1.    breach of contract based on OrthAlliance's alleged failure to perform as required under the Service Agreement;[11]

2.    declaration regarding the proper termination of the Service Agreement by the Plaintiff Doctor;[12]

3.    claims concerning the legality of the agreements, or portions thereof, between the Plaintiff Doctors and OrthAlliance based on the financial arrangements between the Plaintiff Doctors and OrthAlliance, and the legality of the agreements between the parties as constituting the unauthorized practice of dentistry based on the amount of control OrthAlliance allegedly maintains over its affiliated orthodontists and practices;[13]

---

[10]    See, e.g., In re Conseco Life Ins. Co. Cost of Ins. Litigation, 323 F. Supp. 2d 1381, 1383 (J.P.M.L. 2004).

[11]    Clower Complaint Count III (**Exhibit 1**); Orthodontic Affiliates Complaint, Count I (**Exhibit 2**); Lahrman Complaint, Count V (**Exhibit 3**); Togrye Complaint, Count I (**Exhibit 4**); Kentucky Center Complaint, Count II (**Exhibit 5**); Garner Complaint, Count IV (**Exhibit 7**); Scott Complaint, Count IV (**Exhibit 8**); Hanson Complaint, Count V (**Exhibit 9**).

[12]    Togrye Complaint, Count IV (**Exhibit 4**); Kentucky Center Complaint, Count I (**Exhibit 5**).

[13]    Clower Complaint, Counts I & II (**Exhibit 1**); Orthodontic Affiliates Complaint, Count III (declaration regarding the validity of the service fee and non competition provisions of the Service Agreement) (**Exhibit 2**); Lahrman Complaint, Count II (**Exhibit 3**); Togrye Complaint, Count III (**Exhibit 4**); Kentucky Center, Original Counterclaim of Drs. Durbin and Huang, Count II (**Exhibit 6**); Garner Complaint, Counts I, II & III (**Exhibit 7**); Scott Complaint, Counts I, II & III (**Exhibit 8**); Hanson Complaint, Counts I, II & III (**Exhibit 9**).

*Brief in support of motion to transfer, 14 September 2004, page 10.*

4.    alleged fraud on the part of OrthAlliance that induced the Plaintiff Doctors to enter into and remain in the Service Agreement;[14]

5.    a declaration regarding the non-assignability of the agreements between the parties, all specifically concerned with OrthAlliance, Inc.'s merger with a subsidiary of Orthodontic Centers of America, Inc.;[15]

6.    violations of state consumer protection laws based on the alleged misrepresentations of OrthAlliance;[16]

7.    breach of duty based on the alleged failure to perform services under the Service Agreements;[17] and

8.    an accounting based on the dominion and control that OrthAlliance exercised over certain bank accounts of the Plaintiff Doctors.[18]

Although there are differences among the various complaints, the majority of the allegations of facts upon which the Plaintiff Doctors' claims are based are common to all because each alleges similar failures of performance on the part of OrthAlliance.[19]

### 3.2.2 The claims of OrthAlliance against the Defendant Doctors.

Each of OrthAlliance's complaints against the Defendant Doctors contains some or all of the following claims:

1.    breach of the Service Agreement based on the fact that the Defendant Doctors attempted to wrongfully terminate their

---

[14]    Lahrman Complaint, Count IV (**Exhibit 3**); Hanson Complaint, Count IV (**Exhibit 9**).

[15]    Lahrman Complain, Count III (**Exhibit 3**).

[16]    Hanson Complaint, Count VI (MASS. GEN. LAWS ch. 93A) (**Exhibit 9**).

[17]    Clower Complaint, Count IV (**Exhibit 1**); Togrye Complaint, Count II (**Exhibit 4**). In *Togrye*, the district court granted summary judgment in favor of OrthAlliance on this claim because it was an element of Togrye's contract claim, not a separate cause of action. *Togrye v. OrthAlliance*, No. 3:01-1579 (May 24, 2004 M.D. Tenn.) (memorandum on motions for summary judgment).

[18]    Clower Complaint, Count V (**Exhibit 1**); Orthodontic Affiliates Complaint, Count II (**Exhibit 2**); Lahrman Complaint, Count VI (**Exhibit 3**); Garner Complaint, Count V (**Exhibit 7**); Scott Complaint, Count V (**Exhibit 8**); Hanson Complaint, Count VII (**Exhibit 9**).

[19]    See In re Motion Picture Licensing Antitrust Litigation, 468 F. Supp 837, 841 (J.P.M.L. 1979).

individual Service Agreements, failed to pay service fees under the Service Agreements and generally failed to perform their obligations under the Service Agreements;[20]

2.    breach of the Employment Agreement due to the Defendant Doctors' entry into competition with OrthAlliance in the performance of practice management functions and their use of confidential information in violation of that agreement;[21]

3.    promissory estoppel based on OrthAlliance's reliance on the Defendant Doctors' promises to remain in, and perform under, the Service Agreement, including the payment of service fees;[22] and

4.    unjust enrichment based on the Defendant Doctors receipt of money, valuable information and services without providing full and fair consideration.[23]

These claims are based on the failure of the Defendant Doctors to perform and properly terminate the Service Agreements, and, in many instances, the claims are identical to those found in the counterclaims asserted by OrthAlliance against the Plaintiff Doctors.[24]  Likewise, the counterclaims thus far filed by the Defendant Doctors, as well

---

[20]    Philipp Complaint, Count I (**Exhibit 10**); Greenbaum Complaint, Count I (**Exhibit 11**); Schnibben Complaint, Count I (**Exhibit 12**); Goodwin Complaint, Count I (**Exhibit 13**); Trawick Complaint, Count I (**Exhibit 14**); Carroll Complaint, Count I (**Exhibit 15**).

[21]    Greenbaum Complaint, Count II (**Exhibit 11**); Schnibben Complaint, Count III (**Exhibit 12**); Goodwin Complaint, Count II (**Exhibit 13**); Trawick Complaint, Count II (**Exhibit 14**); Carroll Complaint, Count II (**Exhibit 15**).

[22]    Philipp Complaint, Count II (**Exhibit 10**); Greenbaum Complaint, Count III (**Exhibit 11**); Schnibben Complaint, Count IV (**Exhibit 12**); Goodwin Complaint, Count IV (**Exhibit 13**); Trawick Complaint, Count III (**Exhibit 14**); Carroll Complaint, Count III (**Exhibit 15**).

[23]    Philipp Complaint, Count III (**Exhibit 10**); Greenbaum Complaint, Count IV (**Exhibit 11**); Schnibben Complaint, Count V (**Exhibit 12**); Goodwin Complaint, Count V (**Exhibit 13**); Trawick Complaint, Count IV (**Exhibit 14**); Carroll Complaint, Count IV (**Exhibit 15**).  Certain of the complaints filed by OrthAlliance also contain particularized claims for breach of the guaranty of payment, breach of the loan agreements and rescission.

[24]    See, e.g., OrthAlliance's Answer to Garner's Original Complaint and Counterclaim, Count VII (**Exhibit 17**); OrthAlliance's Answer to Scott's Original Complaint and Counterclaim, Count VII (**Exhibit 18**); OrthAlliance's Answer to Hanson's Original Complaint and Counterclaim, Count VII (**Exhibit 19**)

as those that OrthAlliance anticipates will be filed, mirror many of the claims made by the Plaintiff Doctors against OrthAlliance.[25]

### 3.2.3  The breach of contract claims.

At the core of each Plaintiff Doctor's complaint, and each Defendant Doctor's counterclaim, is the allegation that OrthAlliance has breached the Service Agreement by failing to provide services.  The Plaintiff Doctors will attempt to prove that OrthAlliance failed to provide management services and failed to cure the alleged breach and that these failures constituted a material breach of the Service Agreement.  Such allegations call into question OrthAlliance's overall business practices with regards to the provision of services to its affiliated practices.[26]  Ultimately, the Doctors' breach of contract claims, viewed together, amount to an allegation of a systematic failure on the part of the OrthAlliance to provide services to its affiliates.

On the other hand, OrthAlliance's counterclaims against the Plaintiff Doctors[27] and its claims against the Defendant Doctors allege breach of the Service Agreements by the Doctors.  OrthAlliance, in its claims and counterclaims, alleges that it performed under the Service Agreements and that the Doctors failed to perform their obligations under those agreements.  As a result, the Doctors were not justified in ceasing to pay

---

[25]  *See* Greenbaum Answer and Counterclaim (**Exhibit 20**); Goodwin Original Answer and Counterclaims (**Exhibit 21**).

[26]  *See In re Motion Picture*, 468 F. Supp. at 841 ("While we recognize that each action before us may involve some unique, localized factual issues, a careful review of the entire record before the Panel has persuaded us that all these actions, regardless of the market are involved, share numerous common questions of fact on the economic and conspiratorial issues, particularly regarding the manner in which film distribution decisions are made in the motion picture industry.").

[27]  *See, e.g.*, OrthAlliance's Answer to Clower's Amended Complaint and Second Amended Counterclaim, Count I (**Exhibit 16**); OrthAlliance's Answer to Garner's Original Complaint and Counterclaim, Count VII (**Exhibit 17**); OrthAlliance's Answer to Scott's Original Complaint and Counterclaim, Count VII (**Exhibit 18**); OrthAlliance's Answer to Hanson's Original Complaint and Counterclaim, Count VII (**Exhibit 19**).

service fees or in attempting to terminate the Service Agreements. Here again, OrthAlliance's method of providing its services pursuant to the Service Agreements is relevant, as is the Doctors' performance under their Service Agreements. Performance by both parties under the Service Agreements and contractual interpretation are and will be factual issues.

In addition, the defenses of OrthAlliance will require duplicative discovery in each of the cases. It is OrthAlliance's defense that the Doctors received the services they wanted and that the merger with Orthodontic Centers of America, Inc. coupled with OrthAlliance's declining stock prices – not the alleged lack of services – are the reasons each ceased paying their service fees. That is, there was a common plan among the Doctors to get out of their contractual obligations by claiming that OrthAlliance breached the Service Agreements when in fact OrthAlliance complied with the terms of those agreements.[28] As a result, the deposition of one doctor, for example, over his utilization of the services and opinion of the merger and declining stock price, or disappointment over the price of his OrthAlliance stock may be useful in each of the cases.

Although each breach of contract claim involves agreements between separate parties, such circumstances are not a bar to consolidation under § 1407 where there are common facts.[29]   Discoverable facts related to the breach of contract claims and

---

[28]    See Orthodontic Affiliates, 210 F. Supp. 2d at 1056.

[29]    See In re Westinghouse Elec. Corp. Uranium Contracts Litigation, 405 F. Supp. 316, 319 (J.P.M.L. 1975) ("[W]hile we recognize that these actions involve some individual questions of fact pertaining to each utility's contractual relationship with Westinghouse, we are persuaded that sufficient commonality of factual issues exists to warrant transfer and that the most just and efficient conduct of these actions can be best achieved through centralized management by a single judge."); see also In re Peruvian Road Litigation, 380 F. Supp. 796, 798 (J.P.M.L. 1974) ("The factual allegations in all actions are inextricably intertwined and raise sufficiently complex common issues concerning the design and construction of the road project to warrant transfer."); In re Motion Picture, 468 F. Supp. at 841.

*Brief in support of motion to transfer, 14 September 2004, page 14.*

counterclaims will involve the extent of the services provided by OrthAlliance, the nature of the services, the usefulness of those services, the extent to which those services were utilized by the Doctors, and the Doctors' performance under the Service Agreements.[30]

The fact that discovery has advanced to different levels among some of the cases also does not bar transfer because discovery already completed may be made applicable to all of the transferred cases.[31]  With respect to any unique issues a Doctor or OrthAlliance may face, any party remains free to move the transferee judge for any reasonable discovery.[32]  Without transfer and consolidation, discovery related to the parties' performance under, and compliance with, the Service Agreements will clearly be duplicated.[33]

Legal theories differing from or in addition to the breach of contract claims are not a bar to transfer and consolidation of an action where the underlying factual allegations are common to all.[34]  Several of those claims are based on facts common to the breach of contract claims.  For example, the breach of the duty of good faith and fair dealing claim is factually based on OrthAlliance's alleged failure to provide services, which is the same factual basis for a breach of contract claim.  Another example is the

---

[30]  The question of whether OrthAlliance cured the alleged breaches within the 90-day period after notice of breach afforded under the Service Agreement is also factually intertwined with and part of the breach of contract claims.

[31]  See In re Stirling Homex Corp. Securities Litigation, 442 F. Supp. 547, 549 (J.P.M.L. 1977) (stating that a party need not participate in discovery to which it has no relation).

[32]  See id.

[33]  See In re Peruvian Road, 380 F. Supp. at 798 (concerning the discovery of common facts and the benefit of having this discovery under the supervision of a single judge).

[34]  See In re General Motors Class E Stock Buyout Securities Litigation, 696 F. Supp. 1546, 1546-47 (J.P.M.L. 1988); In re Sterling Homex, 442 F. Supp. at 549.

*Brief in support of motion to transfer, 14 September 2004, page 15.*

accounting claim brought by certain Plaintiff Doctors. The claims for an accounting are based on the control that OrthAlliance maintained over the bank accounts of the Plaintiff Doctors pursuant to the Service Agreements.[35]    The basis of the claim is that OrthAlliance withdrew money from the account for services it allegedly did not provide. Again, the factual basis of that particular claim concerns performance under the Service Agreements.

### 3.2.4  Legality of the agreements in whole and in part.

Although the legality of each agreement must be determined under applicable state law, certain facts pertaining to this issue are common to all of the Doctors. The Plaintiff Doctors' illegality allegations are based on the theory that the agreements constitute the unauthorized practice of dentistry by OrthAlliance, that the agreements provide for the illegal sharing of dental fees, and/or that the restrictive covenants contained in the agreements are invalid.[36]  Under any of the theories, the common facts include the extent of the control and influence OrthAlliance exerted over its affiliated practitioners, the manner in which OrthAlliance implemented the terms of its agreements, the financial arrangements it entered into with its affiliated practices, the financial documentation reflecting those arrangements and the extent to which OrthAlliance impeded or influenced the professional judgment of its affiliated practitioners. Issues of contract interpretation will also be relevant to the question of

---

[35]    Clower Complaint, Count V (**Exhibit 1**); Orthodontic Affiliates Complaint, Count II (**Exhibit 2**); Lahrman Complaint, Count VI (**Exhibit 3**); Garner Complaint, Count V (**Exhibit 7**); Scott Complaint, Count V (**Exhibit 8**); Hanson Complaint, Count VII (**Exhibit 9**).

[36]    Clower Complaint, Counts I & II (**Exhibit 1**); Orthodontic Affiliates Complaint, Count III, ¶ 4 (declaration regarding the validity of the service fee and non competition provisions of the Service Agreement) (**Exhibit 2**); Lahrman Complaint, Count II (**Exhibit 3**); Togrye Complaint, Count III (**Exhibit 4**); Garner Complaint, Counts I, II & III (**Exhibit 7**); Scott Complaint, Counts I, II & III (**Exhibit 8**); Hanson Complaint, Counts I, II & III (**Exhibit 9**); see Kentucky Center, Original Counterclaim of Drs. Durbin and Huang, Count II (**Exhibit 6**).

legality. Thus, discovery on the legality issue involves facts common to each of the Plaintiff Doctors' individual claims.[37]   In addition, pending motions for summary judgment are not a bar to transfer where the question of the legality of any agreement, or portions of the agreement, may be decided by the transferee judge applying the laws of the relevant state.[38]

### 3.3   The convenience of the parties and witnesses will be served by transferring the cases under § 1407; transfer and consolidation will result in the just and efficient conduct of the actions.

The selection of any single forum may create inconveniences on the part of some parties and witnesses. In this litigation, the various witnesses and parties are spread out among several states. A transferee judge may lessen such inconveniences by arranging for depositions to be conducted in other districts.[39]  Without consolidation, different judges and magistrates would have to resolve similar issues and monitor proceedings identical to those occurring in different districts, which would cause a needless taxing of judicial resources.

The number of cases and the geographical dispersion of the districts in which the cases were brought impede the voluntary coordination of pre-trial efforts among the various parties and courts.[40]  Transfer of the cases will serve the objectives of § 1407 by

---

[37]      See MANUAL FOR COMPLEX LITIGATION, FOURTH § 20.133 (2004).

[38]      See In re Data General Corp. Antitrust Litigation, 510 F. Supp. 1220, 1227-28 (J.P.M.L. 1979) ("We see no reason to delay transfer because of the pendency of a motion to dismiss . . . . 'It is within the very nature of coordinated or consolidated pretrial proceedings in multidistrict litigation for the transferee judge to be called upon to apply the law of more than one state.'"), quoting In re Air Crash Disaster at Boston, 399 F. Supp. 1006 (D. Mass. 1975).

[39]      See In re IBM Peripheral EDP Devices Antitrust Litigation, 411 F. Supp. 791, 791-92 (J.P.M.L. 1976).

[40]      See 15 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3863 (2d. 1986) (stating that the Panel typically denies transfer "when the Panel believes that informal, voluntary coordination among the parties presents an adequate alternative to formal transfer"); MANUAL FOR COMPLEX LITIGATION, FOURTH § 20.14 (2004).

*Brief in support of motion to transfer, 14 September 2004, page 17.*

"eliminat[ing] duplication in discovery, avoid[ing] conflicting rulings and schedules, reduc[ing] litigation cost, and sav[ing] the time and effort of the parties, the attorneys, the witnesses, and the courts."[41]  For instance, additional and needless local counsel expenses are incurred with each duplicative discovery request or pretrial motion. Transfer and consolidation will alleviate these extra costs through coordination and centralization.  In addition, transferring to a single district "afford[s a] unique opportunity for a global settlement," where few transferred cases are actually remanded for trial but are settled in the transferee court.[42]

In the absence of transfer, a heavy duplication of efforts by the parties and the courts may result.  Indeed, discovery requested in one case often duplicates that requested in another.[43]  In many cases pretrial motions addressed to common issues have been filed.  It is likely that this will continue in each case.  Without consolidation, OrthAlliance and the Doctors will continue to be faced with responding to repetitive discovery requests and briefing similar issues in many different forums, especially with respect to the recently filed cases.  The courts in which these individual cases are located will be required to rule on identical or closely related disputes, presenting a danger of inconsistent rulings.  Thus, transfer is appropriate and beneficial for the just and efficient conduct of the cases.

---

[41]    MANUAL FOR COMPLEX LITIGATION, FOURTH § 20.131 (2004), citing In re Plumbing Fixture Cases, 298 F. Supp. 484 (J.P.M.L. 1968).

[42]    MANUAL FOR COMPLEX LITIGATION, FOURTH § 20.132 (2004).

[43]    See, e.g., "Plaintiffs' First Request for Production" in the Scott and Garner cases (**Exhibits 22 & 23**).

### 3.4    The Northern District of Indiana is the appropriate forum for transfer.

There are several important factors that weigh in favor of consolidating the cases in the Northern District of Indiana.   Two cases against OrthAlliance, *Orthodontic Affiliates* and *Lahrman*, and one of the cases brought by OrthAlliance, *Goodwin*, are pending in that district before Judge Philip P. Simon.  That court has issued rulings in the *Orthodontic Affiliates/Lahrman* case and is familiar with the contractual arrangements between OrthAlliance and the Doctors.[44]  Further, another case against OrthAlliance recently settled in Judge Simon's court.[45]  According to the Federal Court Management Statistics for 2003, the median time from the filing of a civil action to disposition in the Northern District of Indiana is approximately eight months. The court ranks twentieth out of the ninety-four district courts in the amount of time it takes from the filing of an action to its disposition.[46]

Alternatively, OrthAlliance requests consolidation of the cases in the Middle District of Florida.  Two of the cases against OrthAlliance are located in this district and OrthAlliance has brought two other actions in the state.   The docket of the Middle District of Florida will allow the litigation to proceed expeditiously.  According to the Federal Court Management Statistics for 2003, the median time from the filing of a civil action to disposition in the Middle District of Florida is approximately eight months.  The

---

[44]    *Orthodontic Affiliates, P.C. v. OrthAlliance, Inc.*, 210 F. Supp. 2d 1054 (N.D. Ind. 2002).  At the time of this opinion, Judge Moody presided over the case.

[45]    *Cohen v. OrthAlliance New Image, Inc.*, No. 1:01-CV-00352 (N.D. Ind.).

[46]    *See* http://www.uscourts.gov/cgi-bin/cmsd2003.pl.

*Brief in support of motion to transfer, 14 September 2004, page 19.*

court ranks nineteenth out of the ninety-four district courts in time from filing to disposition.[47]

## 4.    PRAYER.

For the foregoing reasons, OrthAlliance respectfully submits that the cases listed on the Schedule of Actions attached to the motion should be transferred to the Northern District of Indiana, or, in the alternative, the Middle District of Florida.

Respectfully submitted,

Scott M. Clearman
Texas Bar No. 04350090
Randy J. McClanahan
Texas Bar No. 13391500
Michael D. Myers
Texas Bar No. 00791331
Robert H. Espey, II
Texas Bar No. 24007163
Brian D. Walsh
Texas Bar No. 24037665
McClanahan & Clearman, L.L.P.
4100 Bank of America Center
700 Louisiana
Houston, Texas 77002
Telephone:   (713) 223-2005
Facsimile:    (713) 223-3664

By: _____
SCOTT M. CLEARMAN
Counsel for OrthAlliance, Inc. and
Orthodontic Centers of America, Inc.

21402.8

---

[47]     *See* http://www.uscourts.gov/cgi-bin/cmsd2003.pl.

*Brief in support of motion to transfer, 14 September 2004, page 20.*

## CERTIFICATE OF SERVICE

I certify that I have, on the date indicated below, served copies of OrthAlliance, Inc.'s MOTION FOR TRANSFER OF ACTIONS FOR CONSOLIDATED PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407 and BRIEF IN SUPPORT by delivering a copy to local counsel for OrthAlliance, Inc. for filing with the clerk of the following United States District Courts:

Northern District of Georgia, Atlanta Division
Northern District of Indiana, Hammond Division
Middle District of Tennessee, Nashville Division
Eastern District of Kentucky, Lexington Division
Middle District of Florida, Jacksonville Division
Middle District of Florida, Tampa Division
District of Massachusetts, Springfield Division
Northern District of Illinois, Eastern Division
Northern District of Florida, Pensacola Division
Southern District of Florida, Miami Division
Northern District of Alabama, Southern Division
District of Oregon

and by delivering the same by U.S. Certified Mail to the following:

Kristin L. Bremer
Barran Liebman
601 SW 2nd Avenue, Suite 2300
Portland, OR 97204
*Attorney for Dr. Kenneth Greenbaum and Greenbaum Orthodontics, P.C.*

James J. Brissette
McGee & Oxford, LLP
2800 Tower Place
3340 Peachtree Road, N.E.
Atlanta, Georgia 30326
*Attorney for T. Barry Clower, D.M.D., and T. Barry Clower, D.M.D., P.C.*

Michael L. Dagley
Bass, Berry & Sims, PLC
AmSouth Center, Suite 2700
315 Deaderick Street
Nashville, TN 37238-3001
*Attorney for Anthony R. Togrye and Anthony R. Togrye D.D.S., P.C.*

Larry G. Evans
Hoeppner Wagner and Evans LLP
1000 E 80th Place Suite 606 South
PO Box 10627
Merrillville, IN 46410
*Attorney for Michael D. Goodwin, D.D.S., M.S. and Michael D. Goodwin, D.D.S., M.S. P.C.*

*Brief in support of motion to transfer, 14 September 2004, page 21.*

Hank D. Fellows, Jr.
Fellows, Johnson & LaBriola
225 Peachtree Street, N.E.
South Tower, Suite 2300
Atlanta, Georgia 30303
*Attorney for T. Barry Clower, D.M.D., and T. Barry Clower, D.M.D., P.C.*

John P. Gobel
Gobel & Hollister
106 Wendell Avenue
Pittsfield, MA 01201
*Attorney for John F. Hanson, Jr. and John F. Hanson, DMD, P.C.*

Richard M. Goldstein
Goldstein Tanen & Trench
Two South Biscayne Blvd., Suite 3250
Miami, Florida 33131
*Attorney for David Garner, Suellen Rodeffer and Rodeffer & Garner, D.D.S., P.A.; Gregory P. Scott and Gregory P. Scott, D.D.S., P.A; and Kentucky Center for Orthodontics, P.S.C., Douglas D. Durbin, D.M.D., M.S.D. and John Huang, D.M.D., M.S.*

A. Jack Hinton
Hinton & Powell
2800 Tower Place
3340 Peachtree Road, N.E.
Atlanta, Georgia 30326
*Attorney for T. Barry Clower, D.M.D., and T. Barry Clower, D.M.D., P.C.*

Benjamin Lee Kessinger, III
Service by Hand-Delivery
Kinkead & Stiltz, PLLC
National City Plaza
301 East Main Street, Suite 800
Lexington, Kentucky 40507-1520
*Attorney for Kentucky Center for Orthodontics, P.S.C., Douglas D. Durbin, D.M.D., M.S.D. and John Huang, D.M.D., M.S.*

David W. Kious, Esq.
Kious & Rodgers
503 N. Maple St
Murfreesboro, TN 37130
*Attorney for Anthony R. Togrye and Anthony R. Togrye D.D.S., P.C.*

Michael A. Kraft
Quinn, Johnston, Henderson & Pretorius
227 N.E. Jefferson
Peoria, IL 61602
*Attorney for Charles L. Schnibben, D.D.S., M.S. and Dr. Charles L. Schnibben, Ltd.*

James P. Rea
Ann McMahan
Dominick, Fletcher, Yeilding, Wood & Lloyd, P.A.
2121 Highland Avenue South
Birmingham, AL 35205
*Attorneys for Ronald G. Philipp and Birmingham Orthocare, P.C.*

Alicia Carroll D.M.D.
11545 N. Kendall Dr.
Miami, FL 33176

Hirschfield & Associates, P.A.
c/o Alicia Carroll D.M.D.
11545 Kendall Dr.
Miami, FL 33176

Trawick Orthodontic Center, P.A.
c/o Stephen C. Trawick, D.D.S.
1100 Airport Blvd., Bldg. A
Pensacola, FL 32504

Stephen C. Trawick, D.D.S.
1100 Airport Blvd., Bldg. A
Pensacola, FL 32504

Roger B. Cowie
Brian A. Colao
Christopher M. LaVigne
Locke, Liddell & Sapp LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
*Attorneys for T. Barry Clower, D.M.D., and T. Barry Clower, D.M.D., P.C.; Don E. Lahrman, D.D.S., M.S.D., Don E. Lahrman, D.D.S., M.S.D., Ben B/ Pence, D.M.D., Columbus Orthodontic Associates, P.C., Charles M. Simons, D.D.S. and Charles M. Simons, D.D.S, Inc.; Orthodontic Affiliates, P.C.; Anthony R. Togrye and Anthony R. Togrye D.D.S., P.C.; David Garner, Suellen Rodeffer and Rodeffer & Garner, D.D.S., P.A.; Gregory P. Scott and Gregory P. Scott, D.D.S., P.A.; John F. Hanson, Jr. and Johns F. Hanson, DMD, P.C.; Kentucky Center for Orthodontics, P.S.C., Douglas D. Durbin, D.M.D., M.S.D. and John Huang, D.M.D., M.S.; Michael D. Goodwin, D.D.S., M.S. and Michael D. Goodwin, D.D.S., M.S. P.C.; Dr. Kenneth Greenbaum and Greenbaum Orthodontics, P.C.*

SIGNED this 14th day of September, 2004.

By: _____

SCOTT M. CLEARMAN